UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROYCE WILLIAMS,

                Plaintiff,

vs.                        Case No. 3:05-cv-479-J-33MCR

ASPLUNDH TREE EXPERT CO.,

                Defendants
_____/

**ORDER**

    This matter comes before the Court pursuant to Defendant's Motion in Limine (Doc. # 44), filed by Asplundh on July 21, 2006. Williams filed a response (Doc. # 53) on August 4, 2006. In its motion in limine, Asplundh seeks the exclusion of eleven categories of evidence, each of which is discussed below.

**I. Background**

    Asplundh Tree Expert Company is "a full service utility contractor performing right-of-way clearing and maintenance, vegetation management with herbicides, meter reading and installation, underground utility locating, infrared scanning, overhead and underground line construction, utility pole maintenance, and street lighting services." (Doc. # 1, at 2.) Williams worked as a groundsman for Asplundh from November 2003 to May 2004, when he went on workers' compensation leave after straining his back. (Doc. # 23, at 2-4.) In October 2004, Asplundh sent Williams a letter explaining that Asplundh terminated

Williams' employment because Williams was a felon.  (See Doc. # 1, at 10.)  Williams, who is an African American, alleges that he suffered intense racial harassment, threats, and violence during his employment with Asplundh.  Id. at 4.

## II.  Analysis of Individual Items of Evidence

### 1.  Prior Discrimination Lawsuits Against Asplundh

Asplundh was the defendant in two lawsuits arising out of allegations of racial harassment of an African American former employee of Asplundh.  (Doc. # 44, at 2.)  Asplundh makes two arguments for the inadmissibility of evidence of these two lawsuits.  First, Asplundh claims that these lawsuits would be improper character evidence and must be excluded under Federal Rule of Evidence 404.  Id. at 2-3.  Asplundh argues that the lawsuits are evidence of prior bad acts offered to show Asplundh's character for the purpose of proving that Asplundh acted in conformity with that character in the matters presently at bar.  Id.  Second, Asplundh argues that, even if the two lawsuits are not improper character evidence, the lawsuits are inadmissible because their "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay." Id. at 4 (quoting Manuel v. City of Chicago, 335 F.3d 592, 596 (7th Cir. 2003)) (internal quotation marks omitted).

Williams argues that the lawsuits would not be offered to

prove conduct in conformity with a character trait of Asplundh. (Doc. # 53, at 3.)  Instead, Williams argues that the lawsuits would be offered to show that Asplundh "knew, or should have known that substantially similar allegations of racial discrimination had been asserted in the past against the company."  Id.

In order to prevail on his claim of a hostile work environment, Williams must show a basis for holding Asplundh liable for the acts of its employees.  (Doc. # 47, at 27.)  To that end, Williams must demonstrate that either "(1) the harassment was perpetrated by a supervisor with immediate or successively higher authority over [Williams], or (2) the harassment was perpetrated by a co-worker, that [Asplundh] knew or should have known of the harassment, and that [Asplundh] failed to take prompt corrective action."  Id. (citing Burlington Indus. v. Ellerth, 524 U.S. 742, 762-63 (1998)).  Thus, Williams must show that Asplundh knew or should have known of the harassment in the case at bar.

Federal Rule of Evidence 404(b) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of . . . intent, . . . knowledge, . . . or absence of mistake or accident . . . ."  Fed. R. Evid. 404(b).  The Eleventh Circuit stated the test for admissibility of acts unrelated to the subject litigation:

> To be admissible, 404(b) evidence must (1) be relevant to
> one of the enumerated issues and not to the defendant's

3

> character; (2) the prior act must be proved sufficiently
> to permit a jury determination that the defendant
> committed the act; and (3) the evidence's probative value
> cannot be substantially outweighed by its undue
> prejudice, and the evidence must satisfy Rule 403.

<u>United States v. Chavez</u>, 204 F.3d 1305, 1317 (11th Cir. 2000).[1]

The evidence must be relevant to a disputed issue in the case.

<u>Compare</u> Fed. R. Evid. 401 ("'Relevant evidence' means evidence

having any tendency to make the existence of any fact <u>that is of</u>

<u>consequence to the determination of the action</u> more probable or

less probable than it would be without the evidence." (emphasis

added)) <u>with</u> Fed. R. Evid. 402 ("Evidence which is not relevant is

not admissible."); <u>see also</u> <u>United States v. Chilcote</u>, 724 F.2d

1498, 1502 (11th Cir. 1984) (holding that evidence not relevant to

the case was inadmissible); <u>United States v. Dothard</u>, 666 F.2d 498,

501 (11th Cir. 1982) ("The test for relevancy . . . is governed by

Federal Rule of Evidence 401 under which the evidence sought to be

admitted must tend to make the existence of some fact <u>to be proved</u>

more or less probable than it would be without the evidence."

(emphasis added)).  Where a party offers evidence under Rule

404(b), it "bears the burden of showing that the proffered evidence

is relevant to an issue other than character."  <u>United States v.</u>

---

[1] <u>United States v. Chavez</u> was a criminal case, but the test for
admissibility of evidence of prior acts is the same in the civil
context.  "Neither the plain language of Rule 404(b) ("a person"),
nor any other consideration, suggests that a court should
distinguish between the criminal and civil contexts when
determining the admissibility of such evidence."  <u>Aqushi v. Duerr</u>,
196 F.3d 754, 760 (7th Cir. 1999).

_Youts_, 229 F.3d 1312, 1317 (10th Cir. 2000).  The proponent of the evidence "must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the other acts evidence."  _Id._ (internal quotation marks omitted).

The two prior lawsuits constitute evidence of prior acts unrelated to this litigation.  Because the Court finds that the evidence does not meet the third element, the Court need not address the first two elements in the test for admissibility of such evidence.

On weighing the probative value of the two lawsuits against their potential for unfair prejudice, the Court determines that the risk of unfair prejudice substantially outweighs the probity of this evidence.  The prior lawsuits are probative, but minimally so, on the question of whether Asplundh should have known that Asplundh employees were harassing Williams.

On the other hand, the lawsuits present a substantial danger of unfair prejudice.  Because the probative value of the prior lawsuits is so small, the Court concludes that the risk of unfair prejudice substantially outweighs the probative value of these lawsuits.  Accordingly, the Court rules that evidence of the two prior lawsuits is inadmissible.

**2.  Evidence of the Florida Attorney General's Memorandum**

Williams reported his allegations to the Florida Attorney General's Office.   The Florida Attorney General's Office

interviewed Williams and another Asplundh employee, Joey Bisque. (Doc. # 44-2, at 1.)  The Attorney General's Office memorialized these interviews in a document titled "Office of the Attorney General, Internal Memo." Id. Asplundh argues that the Attorney General's memorandum is inadmissible at trial because it is hearsay. (Doc. # 44, at 5.)  Specifically, the memorandum merely records the hearsay statements made by Williams and Bisque. Id. Asplundh further argues that the Attorney General's memorandum cannot be admitted as a public investigation report because the memorandum constitutes "preliminary summaries of [the] interviews with [Williams] and Bisque." Id. at 6.  As such, it is not a report of a public investigation. Id.  Finally, Asplundh argues that, even if the memorandum constitutes a report of a public investigation, it is nevertheless inadmissible because the memorandum is untrustworthy. Id. at 6-7.

Williams submits that the Attorney General's memorandum is admissible as a report of a public investigation under Federal Rule of Evidence 803(8)(c). (Doc. # 53, at 7.)  Williams argues that the memorandum constitutes a report of a public investigation because it "contains factual information, recommendations and impressions . . . gathered after interviewing witnesses and investigating the allegations of race discrimination made . . . by [Williams] and Mr. Joey Bisque." Id. Further, the memorandum "is reliable and does not present any concern of untrustworthiness, as

6

it was prepared by an unbiased public officer in the course of conducting his professional duties." Id. Williams admits that the interviews can be characterized as a "limited investigation," but argues that the limited nature of the investigation should affect the memorandum's weight rather than its admissibility. Id. at 8.

Williams is correct that the investigation was limited. In fact, the Attorney General's memorandum is merely a record of the two interviews conducted by the Florida Attorney General's office. Aside from the physical descriptions of Bisque and Williams, and the notation that the interview was conducted at the home of the Columbia County NAACP Secretary on October 20, 2004, the memorandum consists almost entirely of recitations of the statements of Bisque and Williams. The memorandum contains no factual findings. The only evaluative opinions it contains are opinions as to the appearance of Bisque and Williams.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Under this definition of hearsay, both the statements of Bisque and Williams, and the Attorney General's memorandum itself, are hearsay if offered to prove the truth of the matters asserted. Williams has not suggested any other purpose for admitting the memorandum other than to prove the truth of the matters asserted therein. Hearsay is inadmissible unless an exception applies. See Fed. R. Evid. 802. Federal Rule of Evidence 803(8)(c) provides an exception for

reports of public investigations.  In civil cases, this exception allows for admission of "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."  Fed. R. Evid. 803(8)(C).

The Attorney General's memorandum is not admissible under this exception for two reasons.  First, the memorandum does not set forth factual findings as to the allegations.  Instead, it is merely a summary of the interviews of Bisque and Williams. Statements made to a public investigator do not become immune to the hearsay rule by virtue of the fact that the investigator records them in writing.  United States v. Pagan-Santini, 451 F.3d 258, 264 (1st Cir. 2006); United States v. Mackey, 117 F.3d 24, 28 (1st Cir. 1997) ("In line with the advisory committee note to Rule 803(8), decisions in this and other circuits squarely hold that hearsay statements by third persons . . . are not admissible under this exception merely because they appear within public records.")

Second, the memorandum contains only the statements of Bisque and Williams.  Williams is the plaintiff in this case, and Bisque was the plaintiff in a separate case against Asplundh (Doc. # 44, at 7 n.1).  Moreover, the circumstances of the interviews indicate that the information in the memorandum came from sources on only one side of the case.  Thus, even if the memorandum did set forth factual findings, exclusion would be required because the sources

8

of information were all on one side.  See Hines v. Brandon Steel Decks, Inc., 754 F. Supp. 199, 201 (M.D. Ga. 1991) (holding report of OSHA investigation inadmissible in part because investigator gathered information "without holding any type of hearing or affording interested parties an opportunity to cross-examine witness"), aff'd, 948 F.2d 1297 (11th Cir. 1991), cert. denied, 503 U.S. 971 (1992).

For both of the foregoing reasons, the Attorney General's memorandum is not admissible as a report of a public investigation.[2]

### 3. Asplundh's Internal Investigation

Asplundh's compliance officer investigated the allegations of harassment and prepared a report setting forth his findings. Asplundh argues that this report is inadmissible because the compliance officer "did not personally observe the events surrounding [Williams'] allegations and therefore, the conclusions set forth in the final report are nothing more than [the compliance officer's] opinions as to what transpired based on his conversations with other employees." (Doc. # 44, at 9.)  Asplundh

---

[2]Williams suggests that the Attorney General's memorandum may be admissible as a business record under Federal Rule of Evidence 803(6).  (Doc. # 53, at 7 n.6.)  The business records exception requires trustworthiness, Fed. R. Evid. 803(6), and the sources of information in the Attorney General's memorandum present the same concerns in the business records context as in the public investigation report context.  In addition, Williams has not shown that he will be able to meet the requirements for admission under the business records exception.

also argues that the report is inadmissible because "it includes conclusory statements and impedes upon the province of the jury." Id. at 8. In addition, Asplundh argues that the report would unfairly prejudice the jury. Id. at 9. Williams argues that the report is admissible as an admission of a party-opponent. (Doc. # 53, at 9.)

Admissions of a party-opponent need not be based on personal knowledge. Blackburn v. UPS, Inc., 179 F.3d 81, 96 (3d Cir. 1999) ("Admissions by a party-opponent need not be based on personal knowledge to be admitted under Rule 801(d)(2)."); see also Fed. R. Evid. 801(d)(2) (omitting any reference to personal knowledge). The Federal Rules of Evidence Advisory Committee noted that the requirement of personal knowledge does not apply to admissions of a party-opponent:

> No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

Fed. R. Evid. 801 advisory committee's note. Therefore, the compliance officer's report need not be based on personal knowledge to be admitted as an admission of a party-opponent.

The Court is not persuaded by Asplundh's other arguments. The case Asplundh cites for the proposition that conclusory statements

are inadmissible does not analyze the question of admissions of party-opponents. See Belgrave v. City of New York, No. 95-cv-1507, 1999 WL 692034 (E.D.N.Y. Aug. 31, 1999). Likewise, the case Asplundh cites for the proposition that internal investigations would unfairly prejudice the jury did not consider the question of admissions of party-opponents, in weighing the probity and prejudice of the internal investigation report. See Moore v. Principi, No. 00-c-2975, 2002 WL 31767802 (N.D. Ill. Dec. 10, 2002). Consequently, assuming a proper predicate is established, the report of Asplundh's internal investigation is admissible as evidence in this case.

**4. Evidence of Subsequent Remedial Measures**

The report prepared by Asplundh's compliance officer also contains a section recommending corrective action. Asplundh argues that this portion of the report should be excluded as a subsequent remedial measure under Federal Rule of Evidence 407. Williams argues that this portion of the report is not itself a subsequent remedial measure. Williams further argues that he does not seek to introduce this evidence for the purpose of showing culpability. Instead, Williams seeks to introduce the document "for the purpose of showing the affirmative recognition, knowledge, and control (or lack of control) by Asplundh concerning the existence of allegations of harassment." (Doc. # 53, at 11.) Williams further contends that the portion of the report is "admissible for the

11

limited purpose of demonstrating Asplundh's knowledge of Plaintiff's allegations." Id.

Federal Rule of Evidence 407 bars evidence of subsequent remedial measures when offered to prove culpability. Fed. R. Evid. 407. A report prepared for the purpose of improving procedures to prevent future harms is a subsequent remedial measure. Alimenta (U.S.A.), Inc. v. Stauffer, 598 F. Supp. 934, 940 (D.C. Ga. 1984). Reports prepared for a purpose other than remedying a problem may not be excluded by Rule 407. See Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, 805 F.2d 907, 918 (10th Cir. 1986) (admitting report after noting that usual purpose of such reports is "investigating the occurrence to discover what might have gone wrong or right"). However, portions of such reports that propose remedies must still be excluded under Rule 407. See id. (noting that portions of admitted report suggesting remedies were redacted). Consequently, Rule 407 excludes the recommendations for corrective action if those recommendations are offered to prove Asplundh's culpable conduct.

As noted above, Williams asserts that his purpose in offering the suggested corrective action is not to prove Asplundh's culpable conduct, but rather for other purposes. Those asserted purposes do not appear to be relevant in this action, though. Williams does not explain why Asplundh's affirmative recognition, knowledge, and control of the existence of Williams' allegations of harassment is

relevant to this proceeding.  Nor does he explain why Asplundh's knowledge of Williams' allegations is relevant.  Accordingly, the Court finds that the recommended corrective action is inadmissible under Rule 407.

   **5.  Testimony of Dr. Mhatre**

   After Williams suffered a workplace injury, Dr. Umesh Mhatre performed a psychological evaluation of Williams at the behest of Asplundh's workers' compensation carrier.  Asplundh argues that Dr. Mhatre cannot testify as an expert because Williams did not provide Asplundh with Dr. Mhatre's opinion as required by Federal Rule of Civil Procedure 26(a)(2).  (Doc. # 44, at 13.)  Asplundh also argues that Dr. Mhatre cannot testify as a treating physician because he examined Williams only once, and only at the direction of Asplundh's workers' compensation carrier.  Williams argues that Dr. Mhatre was not a retained expert, and that he should be allowed to testify "as to his observations and diagnosis of [Williams'] condition as well as his medical belief as to the cause of that condition." Id. at 15.

   Federal Rule of Civil Procedure 26(a)(2)(B) requires a party to disclose in advance of trial the written report prepared by that party's expert "with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).  Williams represented

13

that "counsel did not enter into any fee agreement with Dr. Mhatre, informally consult with him or otherwise retain Dr. Mhatre after the commencement of this lawsuit for the purpose of providing opinion testimony." (Doc. # 53, at 14.)

Physicians who are not retained to provide expert testimony do not come under this rule. Fed. R. Civ. P. 26 advisory committee's note ("The requirement of a written report . . . applies only to those experts who are retained or specially employed to provide such testimony in the case . . . . A treating physician, for example, can be . . . called to testify at trial without any requirement for a report."). In Green v. Office of the Sheriff's Office, No. 3:99-cv-658, 2002 U.S. Dist. LEXIS 26485 (M.D. Fla. Nov. 4, 2002), the Court stated, "the key to the treating physician's being excused from the report requirement is that she testify only as to observations made during the care and treatment of the party." Id. at *17 (citing Patel v. Gayes, 984 F.2d 214, 218 (7th Cir. 1993)). In Rogers v. Detroit Edison Co., 328 F. Supp. 2d 687 (E.D. Mich. 2004), the Court stated, "a majority of courts hold that a Rule 26(a)(2)(B) report is not required from a treating physician unless the physician will testify to matters learned outside the scope of treatment." Id. at 689.

It is clear that Rule 26(a)(2) distinguishes between retained and non-retained experts. The cases interpreting the rule distinguish between facts a physician learned while performing the

duties of a physician, and facts a physician learned while performing the duties of an expert witness. Consequently, the Court determines that Williams' failure to include a Rule 26(a)(2)(B) report in his expert witness disclosure does not bar Dr. Mhatre from testifying.

Asplundh appears to argue that any report Dr. Mhatre drafted after his examination of Williams would be inadmissible hearsay. (Doc. # 44, at 12.) Williams maintains that Dr. Mhatre's report is admissible as a business record. (Doc. # 53, at 16 n.13.) If Williams is able to show that the report is admissible under an exception to the hearsay rule, the Court will consider admitting the report. Consequently, the Court will address the matter at the appropriate time at trial.

### 6. Testimony of Andrew Burnham

Burnham is an employee of Asplundh. After being fired from Asplundh, Burnham signed a declaration corroborating Williams' allegations. (Doc. # 53, at 16 n.14.) After Asplundh rehired him, Burnham gave deposition testimony retracting the statements in his earlier declaration. Id. Asplundh fears Williams will call Burnham to testify at trial for the sole purpose of impeaching Burnham with his declaration. (Doc. # 44, at 13.) Williams argues that he is uncertain how Burnham will testify at trial, and so Williams will not call Burnham for the sole purpose of impeaching him. (Doc. # 53, at 17.) Williams further argues that, if

15

Burnham's trial testimony is inconsistent with his earlier declaration, the earlier declaration should be admissible for the purpose of impeaching Burnham's testimony. Id. at 18 & n.15.

Asplundh is correct that a party may not call a witness for the sole purpose of presenting impeachment evidence that would otherwise be inadmissible. Whitehurst v. Wright, 592 F.2d 834, 839-40 (5th Cir. 1979). However, this is not such a case. The Court accepts Williams' averment that he is uncertain how Burnham will testify at trial. Burnham has given statements both favorable and unfavorable to Williams. The Court will allow Burnham to testify, and the Court will also allow proper impeachment.

### 7. Illegal Drug Use at Asplundh's Work-Sites

Asplundh argues that evidence of illegal drug use by employees at Asplundh's work-sites should be barred as irrelevant. Specifically, Asplundh argues that "use of marijuana does not make someone more or less inclined to engage in discriminatory and harassing activities based on race." (Doc. # 44, at 15.) Williams argues that on-the-job drug use tends to show that Asplundh did not adequately supervise its employees. (See Doc. # 53, at 20.) Williams also argues that evidence of drug use is proper character evidence.

Asplundh has not convinced the Court that on-the-job drug use is irrelevant in this case. This evidence appears to be relevant to Williams' claim of negligent retention. Under Florida law, a

prima facie case of negligent retention[3] requires the following three elements:

> (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty . . . performed or for employment in general; and (3) it was unreasonable for the employer to [retain] the employee in light of the information he knew or should have known.

Malicki v. Doe, 814 So. 2d 347, 362 (Fla. 2002).  On-the-job drug use appears relevant to at least two of the elements of this cause of action.  Consequently, the Court will not bar Williams from introducing evidence of drug use at Asplundh's work-sites.

### 8.  Correspondence Between Asplundh and the NAACP

Williams brought his complaint of discrimination to the NAACP. Glynnell Presley, the secretary of the Lake City chapter of the NAACP, wrote a letter to Asplundh requesting that Asplundh conduct an investigation of Williams' allegations.  Asplundh responded with a letter, to which it attached a copy of its investigation report. Consequently, there are three pieces of evidence at issue: (1) Presley's letter to Asplundh; (2) Asplundh's response to Presley; and (3) Presley's testimony.

Asplundh argues against the admissibility of Presley's letter or testimony by Presley as to the contents of Presley's letter.

---

[3]The Florida Supreme Court actually set out the elements for negligent hiring, but the two torts appear to be nearly identical. See Malicki v. Doe, 814 So. 2d 347, 362 n.15 (Fla.  2002).

Asplundh states that Presley's letter "relies on statements allegedly made by [Asplundh's] employees and regurgitated . . . during a conversation with [Williams]." (Doc. # 44, at 16.) Asplundh argues that such statements constitute inadmissible hearsay. In addition, such statements should be excluded as misleading and prejudicial under Federal Rule of Evidence 403. For those reasons, Asplundh argues, "Presley's letter and testimony regarding the same should not be admitted as evidence." Id.

Williams states that Presley will testify for the purpose of authenticating Asplundh's letter. In addition, Presley will "discuss his understanding as to why the [Asplundh] letter [and investigation report] were written and sent to him." (Doc. # 53, at 21.) Williams represents that the contents of Presley's letter will not be offered for their truth: Williams "does not intend to offer into evidence the specific contents of the letter pertaining to [Williams'] factual allegations for the purpose of proving the truth of those facts." Id. at 22. Instead, "Presley's testimony and letter will be offered to demonstrate the simple fact that Mr. Presley initiated an NAACP investigation based on his understanding of Williams' allegations, that his communications to Asplundh sparked an Asplundh investigation, and that he received the [Asplundh letter and investigation report] in response." Id. at 21. Williams asserts that this evidence is "clearly probative of central issues in the case." Id. at 22. In addition, Williams

18

argues that the contents of Presley's letter are admissible under the hearsay exception for business records.  <u>Id.</u> at 21.

Asplundh does not appear to object to Presley authenticating Asplundh's letter.  Thus, Presley will be permitted to authenticate Asplundh's letter in a proper or unobjectionable manner.

Williams' argument that the contents of Presley's letter are admissible under the business records exception is unavailing.  The business records exception excepts the following from the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the custodian or other qualified witness, unless the source of information or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6).  "For this exception to be available, all persons involved in the process must be acting in the regular course of business -- otherwise, an essential link in the trustworthiness chain is missing."  <u>T. Harris Young & Assocs., Inc. v. Marquette Electronics, Inc.</u>, 931 F.2d 816, 828 (11th Cir. 1991).  "[I]f information going from observation to final recording is to be received under this exception, all parts of the process must be conducted under a business duty."  2 K. Broun, <u>McCormick on Evidence</u> § 290, pp. 314-15 (6th ed. 2006).  The business records

exception "does not eliminate double hearsay problems." <u>United States v. Bueno-Sierra</u>, 99 F.3d 375, 379 n.10 (11th Cir. 1996). Thus, the business record exception will not automatically solve the problem of hearsay statements within a business record. That problem can be solved with another application of the business records exception if the hearsay statement itself meets all the requirements of the business records exception. Such would be the case if one businessperson communicated information in the course of a regularly conducted business activity to another businessperson, and the second businessperson recorded the information in the course of a regularly conducted business activity. Fed. R. Evid. 803(6). A second way to solve the problem is if the hearsay statement meets the requirements of another hearsay exception. 2 K. Broun, <u>McCormick on Evidence</u> 290, p. 315 (6th ed. 2006).

In this case, it appears Presley's letter contains hearsay statements from Asplundh's employees. There is no suggestion that the Asplundh employees made such statements in the course of a regularly conducted business activity. Thus, these statements cannot be admitted under the business records exception. Moreover, there is no suggestion that these statements satisfy the requirements of any other hearsay exception. Consequently, these statements are hearsay, whether or not Presley's letter is itself a business record.

Similarly unavailing is Williams' argument that Presley's letter is not hearsay because it is not offered for its truth. The Federal Rules of Evidence require that all evidence have some tendency to prove or disprove some fact of consequence in the litigation.[4] The statements in Presley's letter are only relevant to this matter if offered for their truth. Indeed, Williams seems to acknowledge that the contents of the letter are not relevant except to show their truth. In explaining the relevance of these statements, Williams says only that they are "clearly probative of central issues in the case." Williams has not shown any relevance these statements would have except as evidence of their truth. Accordingly, the hearsay statements recorded in Presley's letter must be excluded from evidence. They may not be presented in either written form, or through the testimony of Presley.

The second piece of evidence in question is Asplundh's response to Presley's letter. That response consisted of a letter with Asplundh's investigation report attached. The admissibility

---

[4] Compare Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (emphasis added)) with Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."); see also United States v. Chilcote, 724 F.2d 1498, 1502 (11th Cir. 1984) (holding that evidence not relevant to the case was inadmissible); United States v. Dothard, 666 F.2d 498, 501 (11th Cir. 1982) ("The test for relevancy . . . is governed by Federal Rule of Evidence 401 under which the evidence sought to be admitted must tend to make the existence of some fact to be proved more or less probable than it would be without the evidence." (emphasis added)).

of various portions of Asplundh's investigation report is decided elsewhere in this Order:  The report itself is admissible, but the portion of the report setting forth recommended corrective action is inadmissible.   The third piece of evidence at issue is the testimony of Presley.   Presley may testify to authenticate Asplundh's response, and he may testify to other relevant matters of which he has personal knowledge.  He may not testify as to the hearsay statements contained in his letter to Asplundh.

## 9.   Testimony on History of Race Relations and Workplace Discrimination

Asplundh argues that testimony on the history of race relations or workplace discrimination is irrelevant in this matter. Williams does not intend to call Presley to testify to such matters.  Since Williams will not call Presley to testify on these matters, the Court excludes such testimony.

## 10.   Testimony of Angela Arteaga

Angela Arteaga is Williams' live-in girlfriend.  Williams states that she personally witnessed harassment on two occasions. Asplundh argues, however, that Arteaga has no personal knowledge of the events in this case.  Asplundh asserts that any information she has about this case is based on hearsay statements made by Williams.  Because she has no personal knowledge, Asplundh argues that her testimony must be barred.

The Court agrees that Arteaga's testimony about matters of which she has no personal knowledge may be barred.  <u>See</u> Fed. R.

22

Evid. 602.   However, Asplundh has not convinced the Court that Arteaga does not have personal knowledge of the issues in this case.   Indeed, Williams asserts that Arteaga personally witnessed two incidents of harassment.   Further, as the live-in girlfriend of Williams, "Arteaga has personal knowledge of the nature and severity of [Williams'] injuries.   (Doc. # 53, at 22.) Accordingly, Arteaga will be permitted to give proper testimony as to matters of which she has personal knowledge.

### 11.   Other EEOC Claims Brought Against Asplundh

Asplundh has given Williams evidence of two claims of racial harassment lodged against Asplundh by the Equal Employment Opportunity Commission.   Asplundh argues that these complaints are irrelevant to the current litigation.   Williams argues that evidence of these two complaints is admissible "for the purpose of demonstrating Asplundh's actual or constructive knowledge of previous, substantially similar discriminatory conduct, discriminatory intent on behalf of [Asplundh's] agents and/or an unlawful pattern of racial harassment.   The Court interprets the parties' arguments as substantially the same on this matter as on the matter addressed in section II.1 of this Order.   Consequently, the Court adopts its analysis set out in section II.1 of this Order as governing this matter:   Evidence of the two previous EEOC complaints is inadmissible.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this
<u>6th</u> day of October 2006.


VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies: All Counsel of Record